SCHOTT, Judge,
dissenting.
I do not subscribe to the theory that Illinois Central’s conduct constituted an implied acceptance of the sublease under the circumstances of this case. To me it is significant that Harvester requested consent to enter into the sublease and this consent was specifically refused. Whereupon Harvester went into the sublease agreement knowing full well that there was some risk, because in the sublease agreement between Harvester and 1601 Poydras Corporation these parties recognized that there might be an attempt on the part of Illinois Central to eject Harvester from the premises and they made provisions for this contingency. From January until September, 1975, these parties were in touch with each other, attempting to make an amicable settlement of this problem. Considering the size of these companies and the fact that this problem was relatively unimportant to both companies, I do not attach a great deal of significance to the fact that so much time went by before Illinois Central decided to take action. That there were changes in its corporate management with new people coming in adequately explains why it did not act with normal diligence.
In my opinion, C.C. Arts. 1811 and 1817 are not controlling in this situation because Illinois Central was not silent after Harvester attempted to sublet the premises. It specifically refused consent, and then engaged Harvester to negotiate to bring about a settlement.
Likewise, Moore v. Bannister is not controlling. That case ultimately turned on the wording of the lease which prevented the lessor from unreasonably withholding his consent. There is no such language in the lease between these parties. Perhaps more important is the fact that there were no equitable considerations in Harvester’s favor as there were in favor of the tenant in the Moore case. There, the tenant had spent in excess of $1200 renovating and redecorating the premises and had made some other improvements with respect to wiring. When the landlord, fully aware that these improvements were going to be and were being made, stood by and took no action until after all the improvements were made there was a strong case of equitable estoppel running against him. In the present case, Harvester simply turned over the property to 1601, both fully realizing that they had no permission from Illinois Central and 1601 operated the parking facility without changing the premises one whit. There is no evidence of any expenditures incurred by Harvester or 1601 except perhaps the cost of signs on the lot.
Other considerations lead me to dissent. These are both giant corporations, as pointed out in the majority opinion, and Harvester was at no disadvantage whatsoever. Its real estate manager testified that he was handling more than 1,000 leases for Harvester around the country. Both of these parties entered into these leases in 1960 and 1961 with the commitment that they would be stuck there until 1986 unless, in Harvester’s case, it was willing to remove its building in exchange for an early termination. In the face of these contractual provisions, Harvester decided for its own reasons, probably because it was convenient or economically desirable, to move from this location. Yet it was unwilling to face up to the *634 obligations which went along with cancellation of the lease. The value to Harvester of the building was approximately $70,000 which was the amount it was willing to risk in making its move without Illinois Central’s consent and in the face of a probable lawsuit, which it might eventually lose.
Prom the standpoint of Illinois Central they were surely unhappy with this lease because of the great appreciation in the value of the property. They were anxious to terminate this lease and sell or lease it on more profitable terms. In this case, they had an advantage in the lease in that Harvester had agreed not to sublet without permission. I see no equitable reason whatsoever to penalize the railroad and reward Harvester by letting Harvester disregard the plain terms of the lease which was voluntarily entered into by it and which was the law between the parties. I would affirm the judgment of the trial court.
BOUTALL, J., dissents for the reasons assigned by SCHOTT, J.